| | |
|---|---|
| Your Name: | David Shuang Liu |
| Address: | 1509 Mefferd Ave. San Mateo, California, 94401 |
| Phone Number: | 650-549-5777 |
| Fax Number: | |
| E-mail Address: | David.shuang.liu@gmail.com |

Pro Se Plaintiff

FILED
JAN 06 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| David Shuang Liu<br><br>Plaintiff,<br><br>v.<br><br>Apple Inc.; Santa Clara County Sheriff's Office<br><br>Defendant. | Case Number<br>C 26 00170 SK<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br>Yes ☒   No ☐ |

**I.   PARTIES**

1. Plaintiff.

   Name:      David Shuang Liu

   Address:   1509 Mefferd Ave. San Mateo, California, 94401

   Telephone: 650-549-5777


   Name:      MUSIFY APP, INC.

   Address:   8 Telegram Mews, Suite 523, Toronto, ON. M5V 3Z5 Canada

   Telephone: 650-549-5777

2. Defendants. [Write each defendant's full name, address, and phone number.]

Defendant 1:

Name: Apple, Inc.

Address: One Apple Park Way, Cupertino, CA 95014

Telephone: (408) 996–1010

Defendant 2:

Name: Santa Clara County Sheriff's Office

Address: 55 West Younger Avenue San Jose, CA 95110

Telephone: (408) 808-4400

## II. JURISDICTION

Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.

3. My case belongs in federal court

☒ under federal question jurisdiction because it involves a federal law or right.

Which federal law or right is involved?

Sherman Antitrust Act of 1890

☒ under diversity jurisdiction because none of the plaintiffs live in the same state as any of the defendants and the amount of damages is more than $75,000.

## III. VENUE

The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check the box for each venue option that applies.

4. Venue is appropriate in this Court because:

☒ a substantial part of the events I am suing about happened in this district.

☐ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

☒ at least one defendant is located in this District and any other defendants are located in California.

## IV. INTRADISTRICT ASSIGNMENT

This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka-McKinleyville. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties.  The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties.  The Eureka-McKinleyville division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.

1. Because this lawsuit arose in ____Santa Clara_____ County, it should be assigned to the _____San Jose_____ Division of this Court.

## V. STATEMENT OF FACTS

**A. The "Matrix" Cycle: A Pattern of Harassment and Destruction** 7. Plaintiff has dedicated his professional life—over 10 years—to researching, designing, and maintaining the "Musify" app. The app generated approximately **$1.2 million USD** in annual profit prior to its termination. 8. However, Apple has trapped Plaintiff in a cycle of destruction and rebuilding that resembles a psychological experiment. Apple has arbitrarily removed Plaintiff's work repeatedly, forcing him to rebuild from scratch six times: * **2013**: Plaintiff's first startup ("Frima") was destroyed after Apple sided with a competitor ("Mercari") in a dispute. * **2018**: The original "Musify" app was removed without warning. * **Jan 2019, Sept 2019, 2020 (3 times), April 2021**: Repeated arbitrary removals. * **Jan 6, 2022**: The final, permanent termination of Plaintiff's developer account.

**B. The JASRAC Extortion and Impossibility of Performance** 9. Apple justified the 2022 termination by citing issues with "fraudulent" JASRAC license documentation. This characterization ignores the objective **Commercial Coercion** Plaintiff faced. As proven by **Exhibit 3**, JASRAC (a music copyright monopoly in Japan) demanded a settlement fee of **28.7 Billion JPY (approximately $215 Million USD)** for past usage. This demand was commercially impossible and extortionate, designed to bankrupt Plaintiff. 10. **Good Faith Negotiation:** Plaintiff attempted to negotiate in good faith, offering **10 Million JPY** as a settlement. JASRAC refused, demanding payment calculations that would amount to **369 Million JPY per month** even for non-paying users. Faced with this impossibility, Plaintiff utilized a valid **Nextone** license (JASRAC's

competitor) to continue operations legally (See **Exhibit 4**). **11. Apple's Complicity:** Apple effectively acted as the "enforcer" for JASRAC's extortion. Instead of recognizing the impossibility of the $215 Million demand, Apple treated Plaintiff's inability to pay as "fraud," utilizing the "Digital Death Penalty" to destroy Plaintiff's business for refusing to submit to coercion.

**C. Disparate Treatment (The "Uber" Standard) 12.** Apple enforces its rules selectively. When **Uber** was caught violating user privacy (fingerprinting) in 2017, Apple CEO Tim Cook invited Uber's CEO to a private meeting to resolve the issue. Uber was not terminated. **13.** In contrast, when Plaintiff faced a licensing dispute, he was given no warning, no meeting, and was immediately terminated. This demonstrates that Apple's termination was not a legitimate enforcement of guidelines, but an anticompetitive act to crush a small rival.

**D. The "Black Box" Strategy 14.** Plaintiff's termination mirrors a documented pattern of "Black Box" terminations used against legitimate developers (e.g., *Digital Will Inc. v. Apple Inc.*). Apple routinely utilizes **Section 3.2(f)** of the Developer Agreement as a catch-all weapon to terminate accounts without evidence, rendering the appeal process a sham.

**E. Refutation of Pretextual "Fraud" Claims 15. The "Multiple Accounts" Necessity:** Apple cites Plaintiff's use of multiple accounts (as listed in **Exhibit 1**) as "fraud". In reality, this was a necessary survival tactic caused by Apple's own antitrust violations. After Apple wrongfully terminated Plaintiff's original accounts without cause (starting with "Frima" in 2013), Plaintiff was forced to open new accounts to exercise his right to compete. This was not an attempt to "mislead" consumers, but a desperate attempt to bypass Apple's illegal blockade. **16. The "Imposter" Allegation (Guilt by Association):** Apple falsely claims Plaintiff created "imposter accounts" for Sirius XM and Stingray. **Plaintiff denies ownership or control of these accounts.** Apple's algorithms linked Plaintiff to third-party developers based on shared open-source code. Punishing Plaintiff for the account naming choices of independent third parties constitutes an unfair "Guilt by Association" standard. **17. The "Illegal Services" Allegation (SEO vs. Piracy):** Apple terminated Plaintiff for referencing terms like "Free MP3" or "Music Downloader." **Plaintiff's app did not facilitate illegal piracy.** These terms were utilized solely for **Search Engine Optimization (SEO)** to reach users searching for free, legal music streaming alternatives. Apple's prohibition on these keywords acts as an anticompetitive restriction on commercial speech.

**F. The Retaliation and False Arrest at WWDC 2025 18.** On **June 9, 2025**, Plaintiff attended Apple's Worldwide Developers Conference ("WWDC") at Apple Park with a valid invitation and ticket. **19.** Plaintiff approached **Susan Prescott** (VP of Worldwide Developer Relations) to peacefully discuss his account termination. **20.** Instead of engaging in business dialogue, Apple executives acted with malice. They ordered Apple global security and law enforcement to forcibly remove Plaintiff. **21.** Apple personnel falsely reported to law enforcement that Plaintiff was "trespassing," despite his valid ticket. Based on this false report, Plaintiff was arrested, charged with a misdemeanor, and imprisoned for approximately 24 hours.

**G. Damages and Severe Injury 22. Financial Ruin:** Plaintiff has lost his entire professional life's work and his primary source of income ($1.2M/year). **23. Psychiatric Injury:** As a direct result of Apple's harassment and the trauma of the false arrest, Plaintiff has been diagnosed with a **Grade 2 Psychiatric Disability**, including severe Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder, and suicidal ideation. Plaintiff is currently unable to work.

## VI.  CLAIMS

**COUNT 1: VIOLATION OF THE SHERMAN ACT, SECTION 2 (Monopolization)** 24. Apple possesses monopoly power in the iOS App Distribution Market. Apple willfully maintains this monopoly by engaging in exclusionary conduct.
25. **Sherlocking:** Apple's conduct is part of a broader strategy known as "Sherlocking"— where Apple uses its platform control to suppress third-party apps that compete with Apple's own services (e.g., *Proton AG* litigation). Apple targeted Plaintiff's "Musify" app because it offered a superior alternative to **Apple Music**. 26. By terminating Plaintiff under the pretext of a licensing dispute, Apple successfully foreclosed a competitor and forced users back to its own ecosystem.

**COUNT 2: VIOLATION OF THE BANE ACT (Cal. Civ. Code § 52.1)** 27. Apple interfered with Plaintiff's Constitutional rights (4th Amendment right to be free from unreasonable seizure; 1st Amendment right to petition) by threats, intimidation, or coercion via the false arrest at WWDC.

**COUNT 3: FALSE IMPRISONMENT / FALSE ARREST** 28. Apple, without legal privilege, intentionally caused the confinement of Plaintiff at WWDC. Plaintiff was a lawful invitee; Apple lacked probable cause to allege "trespassing." This conduct directly resulted in Plaintiff's imprisonment.

**COUNT 4: BREACH OF IMPLIED COVENANT OF GOOD FAITH** 29. Every contract contains an implied duty of good faith. Apple breached this duty by enforcing its "Fraud" provisions selectively. Apple allows large partners (Uber) to cure major violations while using immediate termination against small competitors for licensing disputes. By exercising its discretion in a discriminatory manner, Apple acted in bad faith.

**COUNT 5: DEFAMATION (SLANDER PER SE)** 30. Apple agents made false statements of fact to third parties (law enforcement and attendees) stating that Plaintiff was committing a crime (trespassing). These statements were false and Slander Per Se.

**COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** 31. Apple's conduct— inviting a developer to a conference only to have him publicly arrested for trying to discuss business—was extreme and outrageous, causing severe psychiatric injury.

**COUNT 7: VIOLATION OF UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200)** 32. Apple's conduct constitutes "unlawful, unfair, and fraudulent" business acts. It is unfair to enforce rules strictly against small developers while waiving them for multi-billion dollar corporations.

## VII.  DEMAND FOR RELIEF

1. **Injunctive Relief:** An order directing Apple to reinstate Plaintiff's Developer Program account.
2. **Compensatory Damages:** For lost profits and business value in excess of **$5,000,000**.
3. **General Damages:** For pain, suffering, and emotional distress in excess of **$1,000,000**.

4. **Direct-to-Artist Exemption**: Apple recognizes a "Donation/Fan-Support" category for Musify that is exempt from the 30% IAP mandate and from even the 5% common too.
5. **Joint "Innovation Pilot"**: A 24-month period where Musify serves as a "Super App" test case for Japanese/D2C features, with regular meetings with Developer Relations.
6. **Invitation to the next WWDC developer conference**
7. **Treble Damages:** For three times the actual damages pursuant to the Clayton Act (Antitrust).
8. **Tort Damages Settlement**: A payment (estimated at $5M–$10M) to cover the $13M crypto loss and lifetime psychiatric care for David Liu.
9. **Loss of Earning Capacity:** For the impairment of Plaintiff's ability to earn a living due to psychiatric injury.
10. **Punitive Damages:** For exemplary damages to punish Defendant for its malicious conduct.
11. **Costs of Suit:** For all costs incurred in this action.

## VIII.   DEMAND FOR JURY TRIAL

Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.

☒ Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date:   January 6, 2026         Sign Name: _____

Print Name:   David Shuang Liu